PERRY'S ADMINISTRATORS, Defendants in Error, v. McGUIRE, Plaintiff in Error.

1. Where a report of a referee, to whom a cause has been referred under the practice act of 1849, (Sess. Acts, 1849, p. 91,) to report upon the whole issue, is accompanied by all the testimony taken by him and forms a part of his report, the supreme court will examine the same and see if the facts found are consistent with the evidence, when the motion for a review distinctly presents the questions of law and fact.
2. The distributee of a solvent estate is a competent witness for the estate. (Stein v. Weidman, 20 Mo. p. 17, affirmed.)
3. As to the weight of evidence to sustain facts found.

*Error to St. Louis Court of Common Pleas.*

This was an action by the administrator of John Perry to recover from John P. McGuire a balance of $2,454.37, on an open and running account between the parties during Perry's lifetime. Suit was commenced by attachment January 20, 1855. Defendant being a non-resident was brought in by publication, and filed his answer. Afterwards, on 17th May, 1856, he filed an amended answer denying the indebtedness to Perry, but that Perry was indebted to him. He denies all knowledge as to the account sued on, and alleges a settlement with Perry about April 15, 1849, when there was two or three hundred dollars due to Perry; that Perry had the services of divers negroes, whose names are given up to his death, and that the hire of them was reasonably worth $821.66, which negroes belonged to defendant, and that the administrators have had said negroes ever since, and that their services are reasonably worth $650 per annum. He further pleaded that the action was not commenced within five years after the cause of action accrued. To this answer plaintiff filed a replication, denying the alleged settlement of April, 1849; denying that either Perry or his administrators had had the services of any negroes of McGuire, and alleging that the negroes mentioned in the answer were the property not of McGuire but of Perry. The cause was referred to a referee, who found that the plaintiff was entitled to

recover the sum of $2,422.87, with interest. The evidence taken consisted, in part, of the testimony of the clerks of Perry, who deposed that they had furnished to defendant from time to time the articles charged in the account against him; that the books containing this account were kept where defendant always had access to them; that many of the entries were made by McGuire himself, who was clerk for Perry at one time, and that he constantly had, up to the time of going away in April, 1849, full means of knowing what was charged against him, frequently examined the books, and never objected to his account as stated in the books of Perry. Other witnesses testified that McGuire spoke of being furnished with all his outfit by Perry and of his having no property in Missouri at the time he left the state for California. There was some evidence that upon a sale of McGuire's property and effects on execution, Perry had purchased the negroes spoken of in the answer of defendant. The defendant gave in evidence the depositions of several witnesses tending to show that Perry had said, shortly before McGuire left Missouri, that McGuire owed him nothing which he intended to trouble him for. On the subject of the negroes, the testimony was that after the sale of them to Perry by the sheriff, his nephew, McGuire, was for a long time, perhaps up to the time of his leaving the state, allowed to have to use of them gratuitously, or for a very trifling compensation; Perry, however, always asserted his title to them, and McGuire never did assert title in the lifetime of his uncle, but acquiesced in the claim of his uncle. McGuire brought a suit in St. François county, since the death of Perry, against his administrators, in which he claimed the ownership of the negroes; in this suit the defendants filed interrogatories to be answered by the plaintiff McGuire, who in his answers referred to certain books and documents for elucidation of what he said. The defendant desired to read these answers in the present suit, to which the plaintiff objected unless the defendant, McGuire, would at the same time produce the books to which he made reference in his answers,

which books were admitted to be in his possession. He declined to produce these books, and the plaintiffs insisting on their objection, the referee excluded the defendant's answers. Bredell, one of the plaintiffs, was permitted to testify respecting matters which came to his knowledge before he was appointed administrator of Perry. Bredell's wife was one of the distributees of Perry's estate. His testimony referred entirely to the ownership of the negroes in question. Defendant objected to Bredell's testimony, as also to similar testimony from John T. Perry and Joseph T. Brown, also distributees of Perry's estate but not parties to this action. Testimony was given showing that defendant was in the habit of getting flour at Perry's mill and had blacksmithing done at his shop, and that memoranda of these transactions were kept by the foremen at the mill and shop and were sent up to Perry's store and then charged in the account kept on plaintiff's books against Maguire. Defendant filed his motion with reasons for setting aside the report of the referee.

*Thomas C. Johnson,* for plaintiff in error.

I. The report of a referee, under the code of 1849, stands upon the same footing as if the case had been tried by the court. When all the evidence is preserved in the bill of exceptions, the supreme court will examine the same and see whether the facts found are consistent with the evidence; whether other facts should not have been found than those stated by the referee; whether the evidence does not prove other facts which would destroy the force and effect of those found; whether the referee has found upon all the issues raised by the pleadings; whether the conclusions of law upon the facts found are correct, and finally whether the referee has erred in the admission or rejection of evidence. These principles are gathered from the case of Hays v. Hays, 23 Mo. 123. In New York, upon an appeal from a referee's report, the court (Lahin v. N. Y. & E. R. R. 11 How. Pr. Rep. 412) says that it will examine and determine whether the referee has passed upon all the material issues made by

the pleadings; whether his findings on each of the questions of fact are supported by the evidence, and whether the legal conclusions from the facts are in accordance with the law of the land. (Hulse v. Sherman, 13 How. Pr. Rep. 411.) In the present case we have all the evidence preserved, the rulings of the referee and his full report.

II. The referee erred in admitting the testimony of Brown, John T. Perry, and Bredell. The two first were distributees of the estate, and the last was distributee in right of his wife and also a party to this suit. It was shown that prior to the suit being brought all the debts were paid; that the personal estate had been distributed except the subject matter of this suit, and the negroes in suit in St. Francois county; that each heir had received already some seven or eight thousand dollars as his share in the distribution. Here is a case where the suit is brought for the immediate benefit of the heirs. There are no creditors to come in and be satisfied before the heirs. Here is no case of a merely solvent estate. The debts have been paid long ago. (See Cullen v. Hanson, 1 Duer, 309.) In the present case the administrators are merely nominal parties. The heirs are the *cestuis que trust*, and immediately entitled to the money—just as much so as if they were parties to the suit. In the case of Scroggin v. Holland, 16 Mo., a widow of an insolvent estate was held competent. In the case of Stein v. Weidman's estate, 20 Mo. p. 17, the court held the widow of a solvent estate a competent witness. In that case the admission was that the estate was solvent; it did not appear that it would be more than solvent or how much, if anything, the widow would receive. The present case is entirely out of the scope and reasoning in Stein v. Weidman.

III. The referee erred in ruling out the interrogatories and answers thereto by McGuire in the suit in St. François county. These interrogatories were filed under the code of 1849. The code prescribes the forms to be gone through to entitle a party to procure an order upon his adversary to answer. The order was obtained, interrogatories sent, and

answers made by McGuire.  The code (Sess. Acts, 1849, p. 98, § 9), prescribes the effect of the answer.  McGuire's answers are competent in the case between same parties, the court and jury being left to determine what weight shall be given to them.

*Thomas T. Gantt*, for defendant in error.

I.  The evidence abundantly justifies the finding of the referee.

II.  That the referee properly refused to go into the question of the ownership of the negroes after he had found that there was no contract of hiring them to Perry, either express or implied.

III.  The referee properly admitted the testimony of John T. Perry, Joseph T. Brown, and Edward Bredell.  The two first were distributees, but were not thereby disabled to testify, (Stein v. Weidman, 20 Mo. p. 17, overruling Penn. v. Watson,) and Bredell, who was administrator and whose wife was distributee of John Perry, is permitted by statute to testify as to any matters occurring before his appointment. (R. C. 1845, p. 76, § 24.)

IV.  The referee properly excluded the answers of McGuire made to interrogatories filed against him in another case in St. François county, in which he plaintiff and Perry's administrators were defendants.  To say nothing of the failure to observe the requirements of the statute, so as to make his answers evidence for any purpose, it is sufficient to remark that those answers referred to certain books in the possession of McGuire and were incomplete without the production of those books.  The plaintiffs were willing to allow the answers to be read if the defendant would at the same time produce his books respecting which he spoke : that is, they were willing to hear his answers, if he would answer fully and intelligibly.  This he declined to do, and the referee very properly refused to listen to his answer at all.  The point needs no illustration.

V.  The referee properly excluded, by striking the same

out of the depositions of the different witnesses, so much of it as was plainly hearsay.

VI. This action was commenced under the act of 1849, and was subject to its provisions. It was therefore necessary, if any dissatisfaction was felt with the finding of the facts by the referee, to make a case and move for a review, which was not done in the present case. Nothing, therefore, is saved by means of which the supreme court can go beyond the finding of the referee. If the special verdict found by him warrants the judgment rendered upon it, then all examination of the testimony is precluded by the state of the record. (Hays v. Hays, 26 Mo. 123.)

EWING, Judge, delivered the opinion of the court.

This cause was commenced under the practice act of 1849, and after the issues were made up it was referred. Upon the report of the referee coming in, the defendant filed his motion to set it aside and for a review, stating the several questions of law and fact upon which a review was sought, but the defendant did not make a case preserving the evidence material to the points made in his motion. All the testimony taken by the referee, however, accompanies and forms part of his report.

This omission, it is contended, precludes any inquiry into the finding of the facts by the referee, and that the only question here is whether the facts as found warrant the judgment of the court. Such, however, is not the practice of this court. Where all the evidence is preserved, and the motion for a review distinctly presents the questions of law and fact, and states specifically the errors in the finding of the referee or court, this is deemed sufficient.

On the trial before the referee, the witnesses, Brown and Perry, who are distributees of the estate, were examined on behalf of the plaintiff, against the objections of the defendant, on the ground that they were persons for whose immediate benefit the suit was prosecuted, there being evidence tending to prove that the debts of the estate had been paid.

We think this point is settled by the decision in the case of Stein v. Weidman, 20 Mo. p. 17. It is maintained, however, that the case before us is distinguishable from that by the fact that, in the one the debts had been paid, and in the other it did not appear that they had been, although the estate was admitted to be solvent. We think there is no foundation for the distinction contended for. In both cases the witnesses were interested as distributees in augmenting the fund of the estate, of which they were to share in greater or less proportions according as the residuum for distribution might be large or small ; but the benefit to the distributee is alike certain and direct in both cases, differing only in degree or magnitude. The common law disqualification of interest in the event of the suit being abolished by our code, the only test of competency is the relation in which the witness stands to the suit as a party. The provision in the New York code on this subject, which is like ours, as expounded by the courts of that state, is held to apply only to a person into whose hands the money collected in the suit will necessarily go, when it is received, or who might take it from the sheriff or the attorney as his own. (Freeman v. Spalding, 2 Kern, 373.) An action can not be said to be prosecuted for the immediate benefit of a person, unless such person would have a right to the amount recovered, or some portion of it, as soon as it should be received by the nominal plaintiff. It should at least be a case where he could maintain an action against such nominal plaintiff for money had and received by him to the witness' use. (Butler 'v. Patterson, 3 Kern, 294.) In the case of Quinn v. Moore, decided in 1857 by the court of appeals, (1 Smith, 435,) which was an action by the administrator to recover compensation for causing the death of a minor, the mother, who was the sole heir and next of kin,· and there being no debts to charge the estate, was held a competent witness for the plaintiff, as not being a person for whose immediate benefit the suit was prosecuted.

The plaintiff, Bredell, was a competent witness as to any

facts accruing anterior to his qualification as administrator. (1 R. C. 1855, p. 133.)

The answer of McGuire to interrogatories filed against him in another suit was offered by the defendant and excluded. We are of opinion that only that part of the answer respecting the ownership of the slaves would have been admissible. This related to the repurchase of the slaves by McGuire and tended to prove they were his property. But if there was a gratuitous bailment of the negroes, as found by the referee, the defendant was not prejudiced by excluding the answer.

The answer of the defendant to the petition traverses the allegation of indebtedness and alleges a settlement between Perry and the defendant a short time prior to April, 1849, of all matters of account between them, and that a balance was shown against the defendant of some two hundred and fifty dollars. Upon this part of the defence the referee found that the answer of the defendant in another suit being excluded, there was no evidence of a settlement and balance struck as pleaded; that the evidence introduced by the defendant on this point tended rather to show that he had a claim against Perry for services which would counterbalance defendant's indebtedness, and might have been pleaded as an offset, or that Perry never intended to press the collection of such indebtedness; but the defendant does not plead a set-off founded on such services, nor any discharge or voluntary surrender of the claim. We see no error on this point. The answer of McGuire was sufficient to put the plaintiff to the proof of his account, and any evidence was admissible on the part of the defendant to reduce it by showing that he had been improperly charged in the account, or that he was never indebted for any items so charged. But under the pleadings he could not prove payment or a voluntary surrender by Perry of the claim sued for, and the referee could not take into consideration such evidence in his finding. Respecting the set-off for services of negroes up to the time of Perry's death, the referee found that when McGuire departed from this state he left the negroes in question in charge of Perry,

who thereafter had charge and control of them; that there was no contract of hire, express or implied, but that if the negroes belonged to McGuire, Perry stood in the relation of a depositary or gratuitous bailee, and only liable as such, and the question of ownership was therefore not passed upon. If the finding of the referee be correct as to the bailment, the defendant can not complain of the omission to decide the question of ownership; for if the evidence warranted the finding, as to the character of the bailment, and we are of opinion it did, it became unnecessary to do so.

As to the claim for services of the negroes rendered since the death of Perry, it was very properly held to be inadmissible as a set-off against the debt sued for, which accrued prior to Perry's death.

In reference to the meal and flour, and blacksmith account, and that part of the store account appearing in the handwriting of Samuel Perry, deceased, who was a clerk of John Perry, it is objected that the evidence does not warrant the finding. The charges composing the two first mentioned, it appears were entered in the books regularly by the clerks from memoranda kept on slates at the mill and shop; and one of the clerks testifies that while he had not personal knowledge of the correctness of all the items, he knew that McGuire had his blacksmithing done at Perry's, and generally got his flour and meal from Perry's mills, and that the witness was in the habit of weighing the flour himself; that defendant seldom got meal or flour elsewhere. Another witness, also a clerk, testifies substantially to the same facts. In addition to this, it may be observed, respecting these as well as the general store account, that McGuire had access to Perry's books; was in the habit of examining them; entered therein many of the items of his own account, and was never heard at any time to object to it or question its accuracy.

As to the California outfit, it is maintained the evidence does not warrant the finding. This is claimed to have been a gift from Perry to McGuire. The testimony of the wit-

ness Daly, who was Perry's clerk from 1846 to the death of Perry in September, 1850, as well as previously thereto, we think, is conclusive on this point, and fully sustains the finding of the referee. Judgment affirmed.